UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LINIUM, LLC,

          Plaintiff,

 -against-           1:17-CV-0200 (LEK/CFH)

SEAN BERNHOIT,

          Defendant.

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

  This case, in which Linium, LLC is suing its former employee—Sean Bernhoit—over his alleged breach of a non-compete agreement, was originally filed in New York state court on November 2, 2016. Dkt. No. 1-1 ("Complaint). On February 22, 2017, Bernhoit removed the action to federal court. Dkt. No. 1 ("Notice of Removal").

  Currently before the Court is Linium's motion to remand the case back to state court. Dkt. No. 10 ("Motion to Remand"); see also Dkt. Nos. 10-7 ("Memorandum"), 13 ("Opposition"), 14-3 ("Reply"). According to Linium, Bernhoit failed to remove the case within the statutory thirty-day deadline, a question that turns on whether Bernhoit was properly served last November. But the parties also failed to raise an issue of subject matter jurisdiction concerning Linium's citizenship. For the following reasons, Bernhoit is directed to amend his Notice of Removal to resolve the jurisdictional issue, and this motion is referred to Magistrate Judge Christian F. Hummel for further proceedings.

## II.   BACKGROUND

According to the Complaint, Linium—an information-technology consulting firm—hired Bernhoit as a Senior Vice President in October 2008. Compl. ¶¶ 4, 13. As a condition of his employment, Bernhoit was required to sign a non-compete agreement that barred him from soliciting Linium's clients and employees and from working for its competitors. Id. ¶¶ 18–19. In December 2015, Bernhoit left Linium and joined Peloton Inc., a "direct competitor of Linium." Id. ¶¶ 31–32. Bernhoit then recruited or attempted to recruit several Linium clients and employees, encouraging them to jump ship and join him at Peloton. Id. ¶¶ 33–37.

On November 2, 2016, Linium sued Bernhoit in the New York Supreme Court for Albany County, alleging breach of the non-compete agreement. Compl.; Dkt. No. 10-1 ("First Hillmann Declaration") ¶¶ 3–4. Because Bernhoit lived in California, Linium hired a California-based process server to serve Bernhoit at his home. First Hillmann Decl. ¶¶ 5–6.

The process server—Harry Kazakian—claims to have personally served Bernhoit at his home in Calabasas, California, on November 5, 2016, at 5:22 PM. Dkt. No. 10-3 ("First Kazakian Affidavit"). In a later affidavit, Kazakian provided more detail about the encounter. Dkt. No. 10-5 ("Second Kazakian Affidavit"). According to Kazakian, he arrived at Bernhoit's house, knocked on the front door, and announced himself. Id. ¶ 9–10. "The individual inside identified himself as Mr. Bernhoit behind the closed door, but would not open the door." Id. ¶ 10. Bernhoit remained behind the door, shouting at Kazakian to get off his property. Id. ¶ 11. Kazakian "responded by announcing service loudly," and then placed the documents "on the door jam of the front door." Id. ¶ 11. In this second affidavit, Kazakian listed Bernhoit's address as being in Burbank, California, as opposed to Calabasas. Id. ¶ 8. But in yet another affidavit,

Kazakian claims this was a "scrivener's error," and that he indeed served Bernhoit at his home in Calabasas (as Kazakian said in the original service affidavit). Dkt. No. 14 ("Third Kazakian Affidavit") ¶¶ 3–8; see also Dkt. No. 14-1 ("Second Hillmann Declaration") ¶¶ 3–7 (claiming responsibility for the "scrivener's error" and confirming the version of events in Kazakian's affidavit).

Bernhoit tells a different story. According to Bernhoit, he left his home in Calabasas at around 9:00 AM and did not return until at least 11:00 PM. Dkt. No. 13-1 ("Bernhoit Affidavit") ¶¶ 5, 9. Bernhoit catalogues his movements throughout the day, including appearances at his daughter's water polo match, a movie theater with his son, and ultimately his grandmother's birthday party. Id. ¶¶ 6–8. Along with his sworn statements, Bernhoit includes various photographs and screenshots that purportedly confirm his account, the most relevant of which is a photograph with his grandmother time-stamped at 5:59 PM. Dkt. No. 13-4.[1] Bernhoit denies that he was ever served by Kazakian. Bernhoit Aff. ¶ 11. He also includes an affidavit from his girlfriend, Tiffani Brooks, who confirms that Bernhoit left the house at around 9:00 AM, that he was at the restaurant for his grandmother's party at around 5:30 PM, that she never saw a process server or any other delivery at the house that day, and that no one was home at 5:22 PM. Dkt. No. 13-5 ("Brooks Affidavit") ¶¶ 5–9.

Despite his claim that he was never served, Bernhoit must have been made aware of the lawsuit through some other means, since in mid-November, attorneys from the law firm of Nixon

---

[1] The Court notes that, assuming the time stamp is accurate, it is still plausible for Bernhoit to have been served at 5:22 PM at his home in Calabasas and appear at the party in Encino by 5:59 PM, which is just ten miles away by road. E.g., Google Maps, http://www.google.com/maps (last visited June 7, 2017) (searching for directions between Bernhoit's address and EuroAsia Restaurant in Encino).

3

Peabody contacted Linium's counsel, claiming to represent Bernhoit in this case. First Hillmann Decl. ¶ 10. Because Bernhoit had not yet filed a responsive pleading, on December 13, 2016, Linium mailed him another copy of the summons and Complaint, a requirement for default judgment under New York law. Id. ¶ 11. Nixon Peabody then again contacted Linium's counsel, asking for an extension of time to answer the Complaint—a request that Linium granted. Id. ¶ 12. In a December 22 conversation regarding a potential settlement, a Nixon Peabody attorney claimed that the attempted service on Bernhoit was improper. Id. ¶¶ 13–14. After (and perhaps in exchange for) additional extension requests, Nixon Peabody offered to accept process on behalf of Bernhoit and thus resolve the alleged service issue. Id. ¶¶ 15–17. Linium again agreed to the extension request, id. ¶ 17, and, according to Bernhoit, his counsel accepted service on January 24, 2017, Opp'n at 1.

Instead of responding to the Complaint, Bernhoit—now through a different law firm called Girvin & Ferlazzo—filed his Notice of Removal on February 22, 2017. Notice of Removal. In the notice, Bernhoit claims federal jurisdiction based on diversity of the parties' citizenships. Id. ¶ 6. In support of this claim, Bernhoit alleges that he is a citizen of California while Linium is a limited liability company both organized in and with its principal place of business in New York. Id. ¶¶ 7–8.

Linium responded by filing its Motion to Remand, arguing that Bernhoit missed the thirty-day deadline for removal. Mem. at 5; see also 28 U.S.C. § 1446(b)(1) (requiring notices of removal to be filed within thirty days after the defendant is served). Because he was served on November 5, 2016, and received another copy of the Complaint by mail in December, the February 22 notice was untimely. Mem. at 5. Bernhoit responds by arguing that he wasn't

properly served on November 5, and thus the thirty-day deadline should be measured from January 24, 2017, when his counsel claims to have accepted service on his behalf. Opp'n at 1.

### III. LEGAL STANDARD

#### A. Subject Matter Jurisdiction

Subject matter jurisdiction is a fundamental predicate to judgment in the federal courts. "Dismissal of a case for lack of subject matter jurisdiction . . . is proper 'when the district court lacks the statutory or constitutional power to adjudicate it.'" Ford v. D.C. 37 Union Local 1549, 579 F.3d 187, 188 (2d Cir. 2009) (per curiam) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). A lack of subject matter jurisdiction cannot be waived, and may be raised by motion or sua sponte at any time. E.g., Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 107 (2d Cir. 1997); see also Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). In the removal context, "[i]f any time before final judgment it appears that the district court lacks subject matter jurisdiction," the district court must remand the case to state court. 28 U.S.C. § 1447(c).

#### B. Removal

28 U.S.C. § 1441(a) permits a defendant to remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" to a district court of the United States. Section 1446 imposes several procedural requirements for removal, however, including a thirty-day time limit for removal after service of process. The Second Circuit has recognized that, "[i]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments,

federal courts construe the removal statute narrowly, resolving any doubts against removability." Somlyo v. J. Lu-Rob Enters., Inc., 932 F.2d 1043, 1045–46 (2d Cir. 1991) (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108 (1941)). But a court "should be cautious about remand, lest it erroneously deprive [a] defendant of the right to a federal forum." Contitrade Servs. Corp. v. Eddie Bauer Inc., 794 F. Supp. 514, 516 (S.D.N.Y. 1992) (quoting Manas y Pineiro v. Chase Manhattan Bank, N.A., 443 F. Supp. 418, 419 (S.D.N.Y. 1978)).

IV. **DISCUSSION**

  A. **Lack of Subject Matter Jurisdiction**

In his Notice of Removal, Bernhoit asserts federal subject matter jurisdiction based on diversity of citizenship. Notice of Removal ¶ 6. "Under the standard diversity jurisdiction statute, 28 U.S.C. § 1332(a), there must be 'complete' diversity among the parties, meaning that each defendant must be a citizen of a different state from each plaintiff." U.S. Bank Tr., N.A. v. Dupre, No. 15-CV-558, 2016 WL 5107123, at *2 (N.D.N.Y. Sept. 20, 2016) (Kahn, J.) (citing Caterpillar Inc. v. Lewis, 519 U.S. 61, 67–68 (1996); Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373–74 (1978)).

Bernhoit claims he is a citizen of California. Notice of Removal ¶ 8. He also alleges that Linium "is [a] New York Limited Liability Company with its principal place of business in Albany, New York." Id. ¶ 7. But Bernhoit seems to have confused the standards for determining the citizenship of a limited liability company with that of a corporation. While a corporation takes the citizenships of the states in which it is incorporated and the state containing its principal place of business, 28 U.S.C. § 1332(c)(1); see also Hertz Corp. v. Friend, 559 U.S. 77, 92–93 (2010) (defining "principal place of business"), an LLC takes the citizenships of each of its

6

members (i.e., its owners), e.g., Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC, 692 F.3d 42, 49 (2d Cir. 2012); Handelsman v. Bedford Vill. Assocs. Ltd. P'ship, 213 F.3d 48, 51–52 (2d Cir. 2000); see also N.K.T. Land Acquisitions, Inc. v. Chase Manhattan Mortg. Corp., No. 07-CV-790, 2007 WL 4324109, at *1 (N.D.N.Y. Dec. 7, 2007) ("The state of an LLC's organization and principal place of business is irrelevant in determining its citizenship for diversity purposes.").

Thus, if any of Linium's members are citizens of California, there would not be complete diversity of citizenship and the Court would lack subject matter jurisdiction. The Notice of Removal does not include any citizenship allegations for Linium's members, and therefore does not establish diversity of citizenship and is inadequate as a matter of law. E.g., Teamsters Local 404 Health Servs. & Ins. Plan v. King Pharm., Inc., No. 15-CV-4666, 2016 WL 1138501, at *2 (S.D.N.Y. Feb. 24, 2016).

"When diversity is not absent from a notice of removal but is defectively alleged," courts typically permit the removing party to amend its notice of removal. Grow Grp., Inc. v. Jandernoa, No. 94-CV-5679, 1995 WL 60025, at *1–2 (S.D.N.Y. Feb. 10, 1995) (citing 28 U.S.C. § 1653); accord Fulfree v. Manchester, No. 98-7007, 1999 WL 385753, at *1 (2d Cir. June 7, 1999) (per curiam); Mills 2011 LLC v. Synovus Bank, 921 F. Supp. 2d 219, 228 (S.D.N.Y. 2013); Rhinehart v. CSX Transp., Inc., No. 10-CV-86A, 2010 WL 2388859, at *4–6 (W.D.N.Y. June 9, 2010); Johnson v. Progressive Ins. Co., No. 03-CV-4891, 2003 WL 21554957, at *1 (S.D.N.Y. July 8, 2003). Here, since Bernhoit alleged diversity jurisdiction in his Notice of Removal but incorrectly applied the legal standard for determining an LLC's citizenship, the Court will give him a chance to amend the notice. Within fourteen days of this Memorandum-Decision and

Order, Bernhoit must either file an amended notice of removal correctly alleging the citizenship of Linium or submit a request for jurisdictional discovery if the citizenships of Linium's members are unknown. Failure to comply with this deadline will result in the remand of this case without further order of the Court.

### B. Timeliness of Removal

As discussed above, federal law requires that a notice of removal be filed within thirty days after the defendant is served. 28 U.S.C. § 1446(b)(1). Thus, whether Bernhoit's removal was proper turns on whether he was properly served in November 2016, as Linium says, or in January 2017, when Bernhoit's counsel claims to have accepted service.

Linium, however, argues that this service issue is irrelevant. Under its view, because Bernhoit must have received the Complaint either from the process server's initial attempt (as shown by him hiring counsel) or when it was sent to him through the mail, the removal clock began to run sometime in 2016. Mem. at 7; Reply at 1–5. In supporting this argument, Linium points to the language of the removal statute, which sets the deadline at thirty days "after the receipt by the defendant, through service *or otherwise*, of a copy of the initial pleading." 28 U.S.C. § 1446(b)(1) (emphasis added).

Linium is incorrect. In Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 347–48 (1999), the Supreme Court held that the thirty-day period under § 1446(b) does not begin to run until—at the earliest—formal service of process is made or the defendant waives such service. This is because service of process "is fundamental to any procedural imposition on a named defendant," including the deadline to remove the case to federal court. Id. at 350; see also, e.g., Creative Kids Far E. Inc. v. Griffin, No. 15-CV-6027, 2016 WL 8710479, at *3 (S.D.N.Y.

8

Jan. 22, 2016) ("[T]he 30-day period for removal cannot begin to run until defendant is an official party to the proceeding and has an obligation to respond to the action, which only occurs after strict compliance with state procedural service rules . . . ."). The case cited by Linium in its Reply for the proposition that formal service (or waiver) is not always required simply does not say what Linium claims. See Mintz & Gold LLP v. Daibes, No. 12-CV-1218, 2015 WL 2130935, at *4–8 (S.D.N.Y. May 6, 2015) (finding removal untimely because the defendant was properly served though counsel years before the removal notice was filed, and that he waived service through his litigation in state court as expressly allowed under Murphy Bros.), aff'd, 643 F. App'x 35 (2d Cir. 2016).

Since mailing the summons and complaint cannot alone constitute service under New York law, N.Y. C.P.L.R. 308, the timeliness of Bernhoit's removal turns on the November 5 service attempt. If the process server is to be believed, First Kazakian Aff.; Second Kazakian Aff., Bernhoit was properly served on November 5, and his removal was untimely. See, e.g., Bossuk v. Steinberg, 447 N.E.2d 56, 58 (N.Y. 1983) ("[I]f the person to be served interposes a door between himself and the process server, the latter may leave the summons outside the door, provided the person to be served is made aware that he is doing so."); Hall v. Wong, 990 N.Y.S.2d 579, 580 (App. Div. 2014) (same); see also N.Y. C.P.L.R. 308(1), 313 (permitting service, even outside of New York, by in-person delivery). But Bernhoit denies that this occurred, claiming he never encountered the process server and wasn't home at the time of the alleged service. Bernhoit Aff.; accord Brooks Aff.

The Court is then left with a factual dispute, one in which at least one of the affiants appears to be lying. Given the potential need for discovery and other investigation to determine

9

the proper outcome of this motion, as well as any discipline of the parties or affiants, the Court will refer this issue to Judge Hummel for factual findings and recommendations. Additionally, the Court will also refer any request for jurisdictional discovery to Judge Hummel, so that all issues related to removal may be simultaneously resolved.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that, within **fourteen days** of the filing of this Memorandum-Decision and Order, Bernhoit shall either amend his Notice of Removal to include a proper allegation of Linium's citizenship or, if he is unable to otherwise determine the citizenships of Linium's members, submit a request for jurisdictional discovery; and it is further

**ORDERED**, that failure to comply with the above deadline shall result in the remand of this case to the Supreme Court of the State of New York, Albany County, without further order of the Court; and it is further

**ORDERED**, that the factual dispute concerning service of process on Bernhoit, and any request for jurisdictional discovery filed pursuant to this Memorandum-Decision and Order, shall be referred to Judge Hummel for further proceedings; and it is further

**ORDERED**, that the Clerk of the Court shall serve copies of this Memorandum-Decision and Order on all parties pursuant to the Local Rules.

**IT IS SO ORDERED.**

DATED: June 15, 2017
Albany, New York

Lawrence E. Kahn
U.S. District Judge